UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ENERGY CONVERSION DEVICES, INC.

               Debtor,

_____/

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST,

               Plaintiff/Appellee,

v.

OVONYX, INC., TYLER LOWREY,
MICRON TECHNOLOGY, INC.,
OVONYX MEMORY TECHNOLOGY, LLC,
and INTEL CORPORATION,

               Defendants/Appellants.

_____/

United States District Court
Case No. 22-10004
Judge Paul D. Borman

Bankr. Case No. 12-43166-TJT
Chapter 11
Judge Thomas J. Tucker

Adv. Pro. No. 18-04320

## OPINION AND ORDER DENYING DEFENDANTS/APPELLANTS OVONYX, INC. AND MICRON TECHNOLOGY, INC.'S MOTION FOR LEAVE TO APPEAL THE BANKRUPTCY COURT'S ORDER DENYING THEIR MOTION TO DISMISS (ECF NO. 1)

Before the Court is Defendants/Appellants Ovonyx, Inc. and Micron Technology, Inc.'s Motion for Leave to Appeal the Bankruptcy Court's Order Denying Their Motion to Dismiss for Lack of Standing (Bankr.Adv. Pro. No. 416, Adv. Pro. No. 18-04320). (ECF No. 1, Defendants/Appellants' Motion for Leave to Appeal.) Plaintiff/Appellee Energy Conversion Devices Liquidation Trust filed a

Response in opposition to Defendants/Appellants' Motion (ECF No. 4), and Defendants/Appellants filed a Reply (ECF No. 5). The Court held a hearing on Defendants/Appellants' motion for leave to appeal on Friday, March 11, 2022. For the reasons that follow, Defendants/Appellants' Motion for Leave to Appeal is DENIED.

## I.  BACKGROUND

### A.  Energy Conversion Devices, Inc. Files Chapter 11 bankruptcy

On February 14, 2012, Energy Conversion Devices, Inc. ("ECD") filed a Chapter 11 petition in the bankruptcy court, which was assigned to Bankruptcy Court Judge Thomas J. Tucker. (Bankr. No. 1.)[1] On July 30, 2012, the bankruptcy court confirmed the liquidation plan of ECD and its wholly-owned subsidiary, United Solar Ovonic LLC ("USO") (the "Plan"), and the Plan became effective August 28, 2012. (Bankr. Nos. 1064, 1220.)

The Plan provided for a liquidating trust, to be created by and to operate under a trust agreement, and for the appointment of a liquidation trustee. (Bankr. No. 1063, Ex. 1, "Trust Agreement.") The liquidating trust is the Energy Conversion Devices

---

[1] Citations to "Bankr. No." are to the lead bankruptcy court docket in the underlying bankruptcy case, *In re Energy Conversion Devices, Inc.*, Case No. 12-43166-TJT (Bankr. E.D. Mich.). Citations to "Bankr.Adv. Pro." are to the subject adversary proceeding, *In re Energy Conversion Devices, Inc.*, Adv. Pro. Case No. 18-04320, (*Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc., et al.*).

Liquidation Trust ("Plaintiff Trust"), and the operative trust agreement is entitled "Liquidation Trust Agreement and Declaration of Trust" (the "Trust Agreement"). John Madden has been appointed the Liquidation Trustee. (Bankr. No. 1063.)

The "primary purposes" of the Trust "are to (i) pursue Causes of Action for the benefit of the Beneficiaries …, (ii) review and object to claims filed in the Bankruptcy Cases, (iii) liquidate the Assets transferred to it on the Effective Date, and (iv) distribute any proceeds of the Assets as may be provided in the Plan and otherwise exercise the duties of a chapter 7 trustee and debtor in possession." (Trust Agreement at p. 1, Recitals D.)

The Trust Agreement provides for the duration and termination of the Trust. Specifically, the Agreement states:

Section 6.01 <u>Duration of Liquidation Trust</u>

This Liquidation Trust shall terminate on the date upon which all of the Assets have been distributed to the Beneficiaries and all of the necessary tax returns have been prepared and filed; *provided, however,* that the Liquidation Trust shall terminate no later than the fifth anniversary of the Effective Date; and *provided further, however,* that prior to such termination date, the Liquidation Trustee may seek multiple fixed-term extensions of such termination date from the Bankruptcy Court if the extension is necessary for the liquidating purposes of the Liquidation Trust. Any such extension must be obtained at least three (3) months before the expiration of the original term and each extended term.

(Trust Agreement at p. 23, Section 6.01 (emphases in original).)

The effective date of the Plan was August 28, 2012. (Bankr. No. 1220.) Thus, pursuant to Section 6.01, the Trust was set to terminate on August 28, 2017, unless the Trust sought to extend its term.

On April 17, 2017, the Trust filed a motion for extension of the Trust, requesting an extension of two years, until August 28, 2019. (Bankr. No. 2586.) The Trust explained that the extension was warranted because "there are still matters pending that require the existence of the Liquidation Trust to be continued for at least two (2) additional years." (*Id.*) The Trust stated that: it was in the process of identifying and engaging buyers for an asset, Ovonic Cognitive Computer, Inc.; it is engaged in ongoing efforts to recover funds from a subsidiary arising out of tax refunds; and, it is the plaintiff to two litigation actions, both on appeal. (*Id.* at p. 4, ¶ 10.)

The bankruptcy court granted the extension, extending the termination date to August 28, 2019. (Bankr. No. 2588.) Plaintiff Trust never sought or obtained a further extension of the termination date. Accordingly, the Trust terminated on August 28, 2019.

Significantly, Section 6.03 of the Trust Agreement gives the Liquidation Trustee winding-up authority to continue to act *after termination of the Trust*. Specifically, that Section states:

4

Section 6.03 <u>Continuance of Liquidation Trust for Winding Up.</u>

**After the termination of the Liquidation Trust and for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until its duties have been fully performed**. Upon termination of the Liquidation Trust, the Liquidation Trustee shall retain for a period of seven years the books, records, Beneficiary lists, Register, and certificates and other documents and files which shall have been delivered to or created by the Liquidation Trustee. At the Liquidation Trustee's discretion, all other records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the Liquidation Trust. Except as otherwise specifically provided herein, upon the termination of the Liquidation Trust, the Liquidation Trustee shall have no further duties or obligations hereunder

(Trust Agreement, Section 6.03 (emphasis added).)

## B. Adversary Proceeding – *Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc., et al.*, Adv. Pro. No. 18-04320

In performing his duties under the Trust Agreement, the Trustee, John Madden, filed the underlying adversary proceeding on July 12, 2018, and then filed an amended complaint on August 1, 2018. (Bankr. No. 2631) (Bankr.Adv. Pro. Nos. 1, 8.) The Plaintiff Trust's First Amended Complaint alleged multiple claims under Michigan law, including breach of contract, alter ego/successor liability, tortious interference with contract, fraudulent transfer, aiding and abetting tortious interference with contract, and declaratory judgment, against five defendants: Ovonyx, Inc.; Micron Technology, Inc.; Tyler Lowrey; Ovonyx Memory Technology, LLC; and Intel Corporation. (*Id.*)

5

All five defendants initially moved for dismissal under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. After extensive briefing and a hearing, the bankruptcy court filed a lengthy, 146-page written Opinion and Order on October 1, 2020, granting the defendants' motions in part, and denying them in part. (Bankr.Adv. Pro. No. 192, 193.) *In re: Energy Conversion Devices, Inc.*, 621 B.R. 674 (Bankr. E.D. Mich. 2020).

On November 5, 2020, the defendants (other than Tyler Lowrey) each filed separate answers to the First Amended Complaint. (Bankr.Adv. Pro. Nos. 201, 203, 205, 207.) The parties have since: (1) engaged in extensive discovery; (2) Defendants Micron Technology, Inc., Ovonyx, Inc., and Ovonyx Memory Technology, Inc., have filed amended answers; (3) Plaintiff Trust filed a second and then a third amended complaint; and, (4) the scheduling order has been amended several times.

The bankruptcy court dismissed the only claim against Defendant Tyler Lowrey on October 1, 2020 (Bankr.Adv. Pro. No. 193), and recently entered a stipulation dismissing claims against Defendant Intel Corporation on March 8, 2022 (Bankr.Adv. Pro. No. 571). While the other three defendants remain in the case, only two of the three defendants, Ovonyx, Inc. and Micron Technology, Inc., moved to dismiss for lack of standing.

On August 20, 2021, two defendants, Ovonyx, Inc. and Micron Technology, Inc., jointly filed their Motion to Dismiss for Lack of Standing. (Bankr.Adv. Pro. No. 296.) In that motion to dismiss, filed essentially two years after the Trust terminated, defendants Ovonyx and Micron argued that the Plaintiff Trust no longer has standing to prosecute any of the claims in this adversary proceeding, because, under Section 6.01 of the Trust Agreement, the Trust terminated on August 28, 2019. Defendants further argued that the Trustee's limited wind-up powers do not give him standing to continue prosecuting the case.

On September 17, 2021, Plaintiff Trust filed a Response in opposition to the defendants' motion to dismiss for lack of standing. (Bankr.Adv. Pro. No. 330.) Plaintiff Trust argued that the Trust can continue to prosecute this action under Section 6.03 of the Trust Agreement. Plaintiff also argued that the defendants' motion must be denied because the defendants improperly conflate standing and capacity to sue, and that the motion must be denied because defendants have waived their argument that the Trust lacks capacity to sue.

On October 4, 2021, the defendants filed a Reply brief in support of their motion to dismiss. Defendants argued, again, that the Trust has no standing to sue after the Trust Agreement terminated on August 28, 2019, and that they have not waived any arguments because the Trust has not maintained its capacity to sue.

Finally, defendants argued that the Trust cannot continue to litigate this case under the Trust Agreement's wind-up provision, Section 6.03.

On November 17, 2021, the bankruptcy court, Judge Tucker, held a telephonic hearing on Defendants' motion to dismiss, and then took the motion under advisement.

On November 24, 2021, Judge Tucker entered an Opinion and Order denying defendants' motion to dismiss. (Bankr.Adv. Pro. No. 417, "Order on Motion to Dismiss."); *In re Energy Conversion Devices, Inc.*, 634 B.R. 537 (Bankr. E.D. Mich. 2021). In his Opinion and Order, Judge Tucker states that the issue before the court "turns on the meaning of a winding-up provision in the liquidation trust agreement." *In re Energy Conversion Devices, Inc.*, 634 B.R. at 538. Judge Tucker ultimately:

> f[ound] and conclude[d] that despite the termination of the Trust under Section 6.01, Section 6.03 of the Trust Agreement unambiguously gives the Liquidation Trustee both the authority and a duty to continue prosecuting this adversary proceeding to conclusion. And this includes prosecution of all claims asserted in the First Amended Complaint, and in any amended complaint that the Court grants leave for Plaintiff to file against the present Defendants in this adversary proceeding. The Plaintiff Trust therefore does continue to have standing to prosecute this case, and prosecute it to conclusion, including any and all appeals by any party, no matter how long that may take.

*Id.* at 542.

### C.    Defendants/Appellants' Motion for Leave to Appeal

On January 3, 2022, Defendants/Appellants Ovonyx and Micron filed the instant Motion for Leave to Appeal the Bankruptcy Court's Order Denying Their Motion to Dismiss for lack of standing. (ECF No. 1, Defs.' Mot.) Defendants/Appellants argue that an interlocutory appeal is necessary to resolve the controlling question of law of whether a liquidation trust loses standing to pursue pending litigation when it terminates under the express terms of the trust agreement. Defendants/Appellants argue that this issue would be unreviewable on a final judgment, necessitating an interlocutory appeal.

On January 12, 2022, Plaintiff/Appellee Trust filed a Response in opposition to Defendants/Appellants' motion for leave to appeal. (ECF No. 4, Pl.'s Resp.) Plaintiff/Appellee Trust argues that the bankruptcy court properly determined that the Plan's winding up provision, Section 6.03, assured Plaintiff Trust's ability to continue to pursue its claims after termination of the Trust, and that Defendants/Appellants have made no showing of "exceptional circumstances" warranting a grant of interlocutory review.

Defendants/Appellants filed a Reply brief on January 19, 2022. (ECF No. 5, Defs.' Reply.) They argue that the issue of the Plaintiff/Appellee Trust's standing is a controlling issue of law, and that no Michigan court has addressed the precise issue

here – whether a liquidation trust loses its standing to pursue pending litigation upon its termination. Defendants/Appellants assert that resolving this issue now will avoid wasting resources by avoiding the remaining discovery, dispositive motions, and trial.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 158(a)(3), a district court may hear an appeal from a bankruptcy court's interlocutory order if the district court grants a party's motion for leave to file such an appeal. Because neither 28 U.S.C. § 158(a), nor Fed. R. Bankr. P. 8004 state how a district court should determine whether to grant an appellant leave to appeal, district courts have adopted the standard set forth in 28 U.S.C. § 1292(b), which deals with interlocutory appeals from district courts to courts of appeal. *In re Brentwood Golf Club*, 329 B.R. 239, 242 (E.D. Mich. 2005); *In re Ragle*, 395 B.R. 387, 394 (E.D. Ky. 2008).

In the Sixth Circuit, courts may permit an interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re ASC Inc.*, 386 B.R. 187, 194 (E.D. Mich. 2008) (citing *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)). "It is well-established that all three statutory requirements must

be met for the court to certify an appeal under § 1292(b)." *Lang v. Crocker Park LLC*, No. 1:09 CV 1412, 2011 WL 3297865, at *5 (N.D. Ohio July 29, 2011) (citing *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994)); *In re Great Atl. & Pac. Tea Co.*, 615 B.R. 717, 722 (S.D.N.Y. 2020) ("A court certifying a decision for interlocutory appeal must be of the opinion that all three of these statutory conditions are met."). Even when all three criteria are met, "district courts have 'unfettered discretion to deny certification' in light of the strong bias in federal practice against interlocutory appeals." *In re Great Atl. & Pac. Tea Co.*, 615 B.R. at 722 (citation omitted).

Interlocutory appeals in bankruptcy cases should be the exception, rather than the rule. *In re Doria*, No. 09-75261, 2010 WL 2870813, at *2 (E.D. Mich. July 21, 2010) (citing *In re ASC Inc.*, 386 B.R. at 194). Because interlocutory appeals contravene the judicial policy opposing piecemeal litigation and cause delay and disruption, they should be granted sparingly and upon a showing of "extraordinary circumstances." *In re Gray*, 447 B.R. 524, 533 (E.D. Mich. 2011); *see also In re Miedzianowski*, 735 F.3d 383 (6th Cir. 2013). "Section 1292(b) 'was not intended merely to provide review for difficult rulings in hard cases.'" *Sigma Fin. Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 200 F. Supp. 2d 710, 723 (E.D. Mich. 2002) (quoting *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

Notwithstanding the above factors, the decision to allow an interlocutory appeal from the bankruptcy court ultimately lies within the sound discretion of the district court. *Sigma Fin. Corp.*, 200 F. Supp. 2d at 723 (citations omitted).

## III.  ANALYSIS

Defendants/Appellants argue that each element of the test set out in *In re ASC Inc.* weighs in favor of granting them leave to appeal the bankruptcy court's Opinion and Order denying their motion to dismiss for lack of standing. Plaintiff/Appellee Trust responds that Defendants/Appellants' motion for leave to appeal should be denied because the liquidation trust agreement's winding up provision allows Plaintiff/Appellee to continue to pursue its claims, and Defendants/Appellants have made no showing of "exceptional circumstances" required for a grant of interlocutory review.

### A.     "Controlling Question of Law"

The first requirement under § 1292(b) is that the issue presented is a controlling question of law. "[I]nterlocutory appeals are limited to questions that present 'neat abstract issues of law.'" *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006) (quoting *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997)). "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351 (citing *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union*

12

*Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). "A legal question of the type envisioned in § 1292(b), however, generally does not include matters within the discretion of the trial court." *Id.* (citing *White*, 43 F.3d at 377). Further, "factual determinations are not appropriate for interlocutory review." *In re ASC*, 386 B.R. at 196. Rather, "[i]nterlocutory appeals are intended for situations in which the court [on appeal] … can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* (internal quotation marks and end citations omitted). "An appeal that presents a mixed question of law and fact does not meet this standard." *Id.* (citation omitted).

Here, Defendants/Appellants argue that the issue of whether a liquidation trust that has terminated under the trust agreement's express terms loses standing to pursue pending litigation "is precisely the sort of pure, controlling question of law for which interlocutory appeal exists." (Defs.' Mot. at p. 11, PageID.23.) Defendants/Appellants state that the issue of standing, and thus whether the court has subject matter jurisdiction, is dispositive. (*Id.* at pp. 11-12, PageID.23-24.) They continue that "whether the Trust has standing depends on the correct interpretation of the Liquidation Trust Agreement – and specifically, the wind-up provision in

13

Section 6.03." (*Id.* at p. 13, PageID.25.) Defendants/Appellants contend that "[t]his contract interpretation is controlling." (*Id.* at p. 14, PageID.26.)[2]

The Court finds that Defendants/Appellants fail to satisfy the threshold requirement for a grant of interlocutory review – a "controlling question of law" – because, although standing is generally considered a controlling question of law, the bankruptcy court did not find, as a matter of law, that trusts have standing to pursue litigation after termination of the trust. The bankruptcy court found, under its interpretation of the terms of the Liquidation Trust Agreement at issue in this case, and specifically that Agreement's winding up provision, Section 6.03, that *this* Trust has the authority and duty to continue to pursue the adversary proceeding. The bankruptcy court stated that its decision "turns on the meaning of a winding-up provision in the liquidation trust agreement." *In re Energy Conversion Devices*, 634 B.R. at 538. As explained below, the bankruptcy court's interpretation of the Trust Agreement (as providing the Trust with authority and duty to continue prosecuting

_____

[2] Plaintiff/Appellee Trust argues in its Response brief that "the issue is not one of standing but one of the Trust's capacity to sue." (Pl.'s Resp. at p. 7, PageID.91 (stating that "[s]tanding and capacity are distinct concepts").) Plaintiff Trust made this same "capacity to sue" argument before the bankruptcy court, in opposition to Defendants' motion to dismiss, but that court found that its ruling made it "unnecessary to discuss the other arguments made by Plaintiff in opposing the Motion [to Dismiss]." *In re Energy Conversion Devices, Inc.*, 634 B.R. at 545. For the reasons set forth in this Opinion and Order, this Court similarly finds that it is unnecessary to address Plaintiff/Appellee's "capacity to sue" argument.

its adversary proceeding), although a question of law, is not a "controlling question of law" as contemplated by section 1292(b).

The bankruptcy court, in its decision denying Defendants' motion to dismiss, consistently discusses its "view" of the entire Liquidation Trust Agreement, and specifically that, "despite the termination of the Trust under Section 6.01, Section 6.03 of the Trust Agreement unambiguously gives the Liquidation Trustee both the authority and a duty to continue prosecuting this adversary proceeding to conclusion." *In re Energy Conversion Devices, Inc.*, 634 B.R. at 542. The bankruptcy court reviewed the Trust Agreement as a whole and stated that the court's "view" is "not inconsistent with any other language in the Trust Agreement," *id.*, and that "Section 6.03 clearly means that the Liquidation Trustee can, and indeed must, 'continue to act' as Liquidation Trustee even after termination of the Trust under Section 6.01, until, among other things, he has liquidated the claims against the Defendants in this adversary proceeding." *Id.* at 543. The bankruptcy court found that "[t]he contrary, narrower view of Section 6.03 argued by [Defendants/Appellants] is plainly not a reasonable interpretation of Section 6.03." *Id.* at 544. Thus, the bankruptcy court's decision on Defendants' motion to dismiss was based on that court's interpretation of the Trust Agreement, and specifically Section 6.03.

15

Defendants/Appellants repeatedly concede in their motion for leave to appeal that this appeal concerns the correct *interpretation* of the Trust Agreement. (Defs.' Mot. at pp. 13-14, PageID.25-26 ("whether the Trust has standing depends on the correct *interpretation* of the Liquidation Trust Agreement – and specifically, the wind-up provision in Section 6.03") ("the bankruptcy court's decision to deny Defendant's motion to dismiss for lack of standing relied upon its *interpretation* of the Liquidation Trust Agreement") ("This contract *interpretation* issue is controlling….") (emphases added).)

While basic contract interpretation is "generally considered to be a question of law for the court," it is not the type of "controlling question of law" that "the framers of section 1292(b) had in mind" when deciding the appropriateness of interlocutory review. *Sigma Fin. Corp.*, 200 F. Supp. 2d at 723 (citations omitted). Courts have consistently held that questions of contract interpretation cannot serve as a basis for interlocutory appeal. *See Federal-Mogul Corp. v. Ins. Co. of State of Penn.*, No. 12-12005, 2015 WL 13037139, at *2 (E.D. Mich. Dec. 22, 2015) (concluding that the interpretation of an insurance contract, "although a question of law, is not a controlling question of law as contemplated by section 1292(b)"); *Sigma Fin. Corp.*, 200 F. Supp. 2d at 723-24 (concluding that "the Court's interpretation of the insurance policy, although a question of law, is not a controlling question of law

16

as contemplated by section 1292(b)"); *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) ("[T]he question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind."); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005) ("While the meaning of a contract generally is considered to be a question of law for the court, a question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal"); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification").[3]

---

[3] Defendants/Appellants rely on *Head v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 05-72650, 2005 WL 2173568 (E.D. Mich. Sept. 6, 2005) as finding "that the issue on appeal was a question of law because the bankruptcy court's ruling required interpretation of a contract – in that case, an insurance policy." (Defs.' Mot. at p. 13, PageID.25.) However, that is not correct. The court in *Head* found that the controlling question of law in that case was the bankruptcy court's determination that "Michigan law still requires a finding of intent in order to void the Policy," even if the policy's clause does not expressly refer to an insured's intent. *Head*, 2005 WL 2173568, at *4. Significantly, the court in *Head* nevertheless denied leave to appeal because it found that Farm Bureau failed to meet the remaining requirements of section 1292(b). *Id.* at *5. The court agreed that "Michigan generally requires a finding of intent before an insurance policy will be voided based on an insured's false statement," and thus that there was not substantial grounds for difference of opinion. *Id.* The court further found that an appeal would unnecessarily delay the

17

Because an examination of the bankruptcy court's order denying Defendants' motion to dismiss in this case shows that it is premised on the bankruptcy court's interpretation of the terms of the Trust Agreement in this case, and particularly Section 6.03, the winding up provision, the Court finds that Defendants/Appellants have failed to present a controlling issue of law meriting interlocutory review. Defendants/Appellants disagree with the bankruptcy court's interpretation of the provisions of the Trust Agreement, but "Congress did not intend 28 U.S.C. §1292(b) to serve an error-correction function." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007).

**B.      "Substantial Ground for Difference of Opinion"**

The second requirement under § 1292(b) is that there be a substantial ground for difference of opinion as to the controlling question of law. A substantial ground for difference of opinion may exist where:

> (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.

---

ultimate termination of the litigation, and that Farm Bureau failed to establish any exceptional circumstances justifying an interlocutory appeal. *Id.*

*In re Miedzianowski*, 735 F.3d at 384 (internal quotation marks and citations omitted). A substantial ground for difference of opinion requires a substantial disagreement regarding the law among the courts, and not simply a disagreement between the parties or a disagreement with the trial court's ruling. *In re ASC*, 386 B.R. at 197. To determine that "there is substantial ground for a difference of opinion" as to a question of law, the Court must have "a genuine doubt as to whether the bankruptcy court applied the correct legal standard." *Certain Underwriters at Lloyd's, London v. Drennen*, No. 20-cv-1645 (LJL), 2020 WL 1816198, at *3 (S.D.N.Y. Apr. 10, 2020) (quoting, ultimately, *MCI WorldCom Commc'ns v. Commc'ns Network Int'l, Ltd.*, 358 B.R. 76, 79 (S.D.N.Y. 2009)).

Defendants/Appellants here argue that no Michigan court has addressed the issue of whether a liquidation trust loses its standing to sue when it terminates under the express terms of the trust agreement, and that this therefore "is a 'difficult' issue of 'first impression' that implicates Michigan law and federal constitutional principles for which ***no*** governing standard has yet emerged." (Defs.' Reply at p. 4, PageID.109 (emphasis in original).)

Defendants/Appellants further contend that only a "very few" courts have considered this issue, and that those courts that have addressed the issue have reached different conclusions. (Defs.' Mot. at pp. 14-17, PageID.26-29.)

19

Defendants/Appellants specifically cite to three decisions: *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *In re Cleveland Imaging & Surgical Hosp., LLC*, No. 14-34974, 2021 WL 3814865 (Bankr. S.D. Tex. Aug. 26, 2021); and *Krys v. Aaron*, 106 F. Supp. 3d 492 (D.N.J. 2015). (*Id.* at pp. 16-17, PageID.28-29.) Defendants/Appellants contend that the *Goldin* and *Cleveland Imaging* courts held, *relying on Texas law*, that the subject trusts lost standing upon termination, and did not retain any wind-up authority to continue litigating, while the *Krys* court concluded that the trust maintained its standing to prosecute claims under its wind-up powers. (*Id.*) Defendants/Appellants argue that "[t]hese disparate conclusions demonstrate a 'disagreement regarding the law' between courts on the 'difficult' question of whether a trust that has ceased to exist nonetheless retains its constitutional standing. (*Id.*)

The Court concludes that its analysis of these three decisions, all of which were considered (and, in the case of *Goldin* and *Cleveland Imaging*, distinguished) by the bankruptcy court below, does not show that the decisions are in conflict with each other, and that the decisions do not represent a "disagreement regarding the law" requiring interlocutory review. Rather, the cases are simply factually distinguishable, and the three decisions were premised on the three courts' interpretations of the different trust agreements in the three cases. In fact, the New

Jersey district court in *Krys* found the Fifth Circuit's decision in *Goldin* "instructive." *Krys*, 106 F. Supp. 3d at 504-05 (finding that "the facts and legal analysis of *Goldin* closely resemble the issues implicated it the pending motion").

In *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999), the Fifth Circuit Court of Appeals held that after a Chapter 11 liquidating trust terminated by its own terms on its third anniversary, the liquidating trust no longer had standing to prosecute claims in a pending lawsuit. *Goldin*, 166 F.3d at 716. The Fifth Circuit stated that it is "crucial to note the purpose of the trust," which "was specifically designed to effectuate the rapid liquidation of the MCORP assets and distribution of them to the creditors." *Id.* at 715. The trust provided that it "shall terminate on the earlier of (1) the third anniversary of the Effective Date or (2) the date as of which substantially all of its assets have been reduced to Cash and distributed." *Id.* The *Goldin* court found that the liquidating trust did not contain any provision giving the trustee any winding-up authority after termination ("the trust instrument is unambiguous in foreclosing the existence of winding-up powers after its third anniversary date"), and that no such winding-up authority existed under Texas law. *Id.* at 716 (explaining that "under Texas law, winding-up powers are a default provision that may be denied to a trustee if the instrument affirmatively indicates they are not contemplated after a specified termination date"). The court thus concluded that the termination of the

21

trust "stripped the trustee of standing" and rendered the trust's claims after that termination date moot. *Id.* at 717.

*In re Cleveland Imaging & Surgical Hospital, L.L.C.*, No. 14-34974, 2021 WL 3814865 (S.D. Tex. Aug. 26, 2021), has facts very similar to those in *Goldin*, and reached the same result, finding the *Goldin* case controlling and *Texas trust law* dispositive and binding. The Texas district court found that the subject trust's termination provision "provides that the Trust would terminate on the earlier of the distribution of all assets or December 31, 2018," and that "[a]llowing termination *after* a post-December 31, 2018 distribution of assets would be inconsistent with the *express* terms of the Trust." *Id.* at *3 (emphases in original) ("The Trust Agreement's plain terms foreclose an application of Texas's statutory wind-up provisions."). The court held that because there was no longer a trust after termination, the trustee no longer had standing to represent the interests of the trust. *Id.* at *1.

*Krys v. Aaron*, 106 F. Supp. 3d 492 (D.N.J. 2015), on the other hand, involved a liquidation trust agreement that, unlike the trusts in *Goldin* and *Cleveland Imaging*, "only requires the Trustee to *begin* distribution upon termination" and, similar to the Trust in this case, expressly provided for the "continuance" of the trust "for winding-up." *Krys*, 106 F. Supp. 3d at 505 (emphasis in original) (noting that Section 10.4 of the Trust expressly recognized a period of time post-termination for "winding up the

affairs of the [Trust]"). The *Krys* court found that the trust's language "implicitly recognizes the Trustee's post-termination authority to wind down the Trust and to make any necessary *final* distributions." *Id.* The court noted that the Restatement of Trusts "has long recognized that the 'powers of a trustee do not end on the trust's termination date but may be exercised as appropriate to the performance of the trustee's duties in winding up administration, including making distribution, in a manner consistent with the purposes of the trust and the interests of the beneficiaries.'" *Id.* at 503 (citing RESTATEMENT (THIRD) OF TRUSTS § 89 (2007); RESTATEMENT (SECOND) OF TRUSTS § 344 (1959)). The *Krys* court then concluded that "the Trust Agreement contemplates and specifically recognizes that the Trustee would, upon termination, be required to continue to administer the Trust assets to the extent necessary to enable the final distribution of assets and to fully wind down the affairs of the Trust." *Id.* at 506. The court added, therefore, that "even if the Trust terminated, the Court finds that the Trustee's post-termination wind up authority permits it to prosecute the PlusFunds' claims" and thus "the Trustee has standing to pursue these claims in this litigation." *Id.*

In this case, the bankruptcy court considered and discussed both the *Goldin* and *Cleveland Imaging* cases, and found them to be "quite different from this case" because, unlike the trusts in those cases, the Trust Agreement in this case "does

contain a provision expressly giving the Liquidation Trustee winding-up authority, Section 6.03" *In re Energy Conversion Devices, Inc.*, 634 B.R. at 541. The bankruptcy court further noted that the *Goldin* and *Cleveland Imaging* cases relied on Texas law, which has no application in this case. *Id.* The court explained that if any state's law applies in this case, it is Michigan (based on the terms of the Trust Agreement), and that Michigan law provides, "with exceptions not applicable here, that the terms of the trust itself 'prevail over any provision' in the Michigan statutes." *Id.* at 541-42 (citing Mich. Comp. Laws § 700.7105(2) as providing that the terms of the trust itself "prevail over any provision" in the Michigan statutes)).[4]

The bankruptcy court found that "[t]he winding-up provision in Section 6.03 therefore controls in determining what authority and duties the Liquidating Trustee has after termination of the Trust." *In re Energy Conversion Devices, Inc.*, 634 B.R. at 542. The first sentence of Section 6.03 requires that the Trustee "continue to act" as Liquidation Trustee "until its duties have been fully performed." *Id.* The court found that these "duties" include, among other things, "*at least*," the continued

---

[4] The bankruptcy court further noted that Mich. Comp. Laws § 700.7817(nn) gives a trustee winding-up powers "[o]n termination of the trust, to exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to person entitled to it," and that Mich. Comp. Laws § 700.7812 states that "[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." *In re Energy Conversion Devices*, 634 B.R. at 542.

prosecution of pending lawsuits to conclusion. *Id.* at 543-44 (emphasis in original) (citing, in part, *Krys*, 106 F. Supp. 3d at 505-06 (finding that the language of a liquidation trust agreement implicitly recognized "the Trustee's post-termination authority to wind down the Trust …" and that such authority "necessarily includes the Trustee's continued latitude to prosecute [causes of action]")).

Thus, the decisions Defendants/Appellants cite are not in conflict, but rather are factually distinguishable and apply basic contract interpretation principles to the trust agreements at issue in each case. Defendants/Appellants fail to demonstrate that these decisions demonstrate a disagreement on the law.

The Court further finds that while this case may involve a question of first impression in Michigan, it does not involve particularly "novel" or "difficult" issues. As discussed above, the bankruptcy court here applied standard principles of contract interpretation to the language of the Trust Agreement and reached a result that appears reasonable. Defendants/Appellants disagree with the bankruptcy court's application of those principles, but not with the principles themselves.

## C.     "Materially Advance the Litigation"

The third requirement of §1292(b) is that an immediate appeal may materially advance the ultimate termination of the litigation. "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal

25

cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F. 3d at 351 (quoting *White*, 43 F.3d at 378-79). Conversely, "[a]n interlocutory appeal will materially advance the litigation if it will save substantial judicial resources and litigant expenses." *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 851 (W.D. Tenn. 2010) (internal quotations and citation omitted).

Defendants/Appellants argue that, "[i]f [they] are correct that the bankruptcy court lacks subject matter jurisdiction over this case because the Trust's standing terminated in August 2019, this litigation should already be over." (Defs.' Mot. at pp. 17-19, PageID.29-31.) Defendants/Appellants contend that an interlocutory appeal will therefore  conserve the parties' and the Court's resources by avoiding unnecessary additional proceedings. (*Id.*)

Plaintiff/Appellee Trust argues in its Response that an interlocutory appeal will not materially advance the ultimate termination of this litigation. (Pl.'s Resp. at pp. 14-16, PageID.98-100.) Plaintiff/Appellee states that the adversary proceeding has not been stayed, and the parties are only months away from the end of fact discovery, followed by dispositive motions due in July 2022, and trial scheduled for September 2022 (which has now been rescheduled for October 2022). (*Id.*) Plaintiff/Appellee Trust also points out that Defendants/Appellants waited nearly

two years after the Trust's expiration, during which discovery issues have been litigated, to raise this "standing" issue. (*Id.*)

Defendants/Appellants contend in their Reply brief that the Trust terminated after Defendants/Appellants filed their first/original motion to dismiss, and that the Trust filed three status reports after that, none of which mentioned its termination. (Defs.' Reply at pp. 5-7, PageID.110-12.) Defendants/Appellants state that they are not Trust beneficiaries and they had no reason to investigate or monitor the Trust's status. (*Id*.) However, counsel for Defendants/Appellants conceded at the hearing that they always had access to the Trust Agreement and thus to its terms.

Certifying an interlocutory appeal materially advances litigation when it "saves judicial resources and litigant expense." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012). "Interlocutory appeal is the most appropriate early in the proceedings. In contrast, the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made." *Id.*

The parties' adversary proceeding has been pending since July 2018, with fact discovery to close next month, in April 2022, followed by expert reports, expert discovery, and then dispositive motions in the following months, with trial scheduled to commence in October 2022. (Bankr.Adv. Pro. No. 565.) Defendants/Appellants

waited almost two years after the termination of the Trust to bring this instant motion to dismiss for lack of standing, during which time the parties have engaged in extensive discovery. An interlocutory appeal should "be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (citation omitted). Defendants/Appellants have not demonstrated that an interlocutory appeal at this stage would do that, and Plaintiff/Appellee would suffer prejudice by any delay resulting from granting such leave. The substantial time and expense already incurred in this litigation further weigh against granting interlocutory appeal.

## IV.  CONCLUSION

For the reasons set forth above, the Court, in the exercise of its discretion, **DENIES** Defendants/Appellants' Motion for Leave to Appeal the Bankruptcy Court's order denying their motion to dismiss (ECF No. 1). Defendants/Appellants fail to satisfy the three prongs of the tripartite standard for certifying an interlocutory appeal, and the Court finds that this is not the exceptional case where such interlocutory review should be granted.

IT IS SO ORDERED.


Dated: March 14, 2022                              s/Paul D. Borman
                                                   Paul D. Borman
                                                   United States District Judge

28